UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

RICK EATON,

        Plaintiff,

   v.

MARK J. SIEMENS, an individual and in his capacity as Chief of Police, CARLOS A. URRUTIA, an individual and in his capacity as City Manager, CITY OF ROCKLIN, a public municipality and public entity,

        Defendants.

NO. CIV. S-07-315 FCD KJM

<u>MEMORANDUM AND ORDER</u>

----oo0oo----

This matter is before the court on defendants'[1] motion for partial judgment on the pleadings, pursuant to Federal Rule of

---

[1] Defendants are the City of Rocklin (the "City"), Mark J. Siemens ("Siemens"), Chief of Police, and Carlos A. Urrutia ("Urrutia"), City Manager (collectively, "defendants").

Civil Procedure 12(c).[2] By the motion, defendants seek partial judgment in their favor on (1) plaintiff's first claim for relief for violation of the equal protection clause on the ground that the United States Supreme Court recently invalidated "class-of-one" equal protection claims in public employment, where, as here, the plaintiff makes no allegation of discrimination based on membership in a protected class;[3] (2) plaintiff's second claim for relief for deprivation of his substantive due process right to pursue a chosen profession on the ground that plaintiff has not alleged the requisite elements for such a claim; namely, that it is virtually impossible for plaintiff to find employment as a police officer due to being effectively "blacklisted" from the law enforcement profession; (3) plaintiff's fourth claim for relief for violation of plaintiff's Fifth Amendment criminal due process rights on the ground plaintiff, who is not a criminal defendant, has no standing to bring such a claim; and (4) plaintiff's fifth and sixth claims for relief against individual defendants Urrutia and Siemens on the grounds that individual managers and/or supervisors are not liable for retaliation under California Labor Code § 1102.5 (California's so-called "Whistle-blowers" statute) or California Government Code § 3309.5 (the Public Safety Officers' Procedural Bill of Rights Act).

---

[2] All further references to a "Rule" are to the Federal Rules of Civil Procedure.

[3] Engquist v. Or. Dept. of Agriculture, 128 S. Ct. 2146 (2008).

2

1     Plaintiff opposes the first three bases for defendants'
2 motion, but concedes as to the fourth basis for the motion, that
3 his fifth and sixth claims for relief may not be asserted against
4 Urrutia and Siemens.  (Opp'n, filed Sept. 5, 2008, at 11:1-13.)
5 Therefore, based on plaintiff's non-opposition, the court GRANTS
6 defendants' motion with respect to the fifth and sixth claims for
7 relief as they are asserted against the individual defendants
8 Urrutia and Siemens.[4]

9     As to the other challenged claims, the court GRANTS in part
10 and DENIES in part defendants' motion.  As a matter of law,
11 plaintiff cannot maintain a "class-of-one" equal protection
12 claim, and he has no standing to assert a Fifth Amendment
13 criminal due process claim.  As such, defendants' motion is
14 GRANTED as to plaintiff's first and fourth claims for relief.
15 Plaintiff, however, is granted leave to amend with respect to his
16 first claim for relief.  As to plaintiff's second claim for
17 relief, the court finds that under the liberal, notice pleading
18 standards in federal court, plaintiff has sufficiently alleged a
19 substantive due process claim based on defendants' purported
20 deprivation of plaintiff's right to pursue his chosen
21 profession.[5]

---

[4]     These claims for relief remain as asserted against defendant City of Rocklin, however.

[5]     Because oral argument will not be of material assistance, the court orders this matter submitted on the briefs. E.D. Cal. L.R. 78-230(h).

3

**BACKGROUND**[6]

On November 1, 2004, Urrutia, the City Manager for the City of Rocklin, issued plaintiff a Notice of Termination dismissing him from employment as a police sergeant for the City. Plaintiff thereafter made a timely written application for an evidentiary hearing to challenge the termination of his employment, pursuant to the MOU. Under the terms of the MOU, plaintiff and the City agreed on the selection of arbitrator William Riker to hold a fact-finding administrative hearing as to whether there was good cause to support the City's termination of plaintiff's employment.

On January 9, 2006, Mr. Riker issued his arbitration decision, recommending to Urrutia that the City's termination of plaintiff "for cause be sustained and the grievance/appeal denied." Mr. Riker found the evidence established the six grounds for termination, including incidents of disobedience, insubordination, wrongful exercise of authority for malicious purpose, and/or subverting the good order of the police department, set forth in the City's Notice of Termination. He concluded:

> As noted, the preponderance of the evidence indicates that Eaton did commit the acts outlined in the six charges. These actions also impacted a wide number of

---

[6] The following statement of facts is drawn from plaintiff's complaint in this action, filed February 16, 2007, and other materials of which the court has previously taken judicial notice, including plaintiff's Verified Petition for Writ of Mandate, filed in the Superior Court of California, County of Placer, the arbitrator's written decision, Urrutia's termination letter, and the Memorandum of Understanding between the City and the Rocklin Police Officers Association (of which plaintiff was a member), pursuant to their collective bargaining agreement ("MOU"). (See Mem. & Order, filed May 23, 2007.)

4

```
        officers within the Department who were aware of
        his behavior.  It is also credible that he did
        negatively impact the good order and efficiency of the
        organization.  If he were allowed to remain as a police
        officer with the City of Rocklin, then his behavior
        would serve as a benchmark against future violations of
        such insubordinate and disruptive nature.  It is a
        recommendation that frankly would be inconsistent with the
        findings.
```

(Defs.' RJN, filed April 10, 2007, Ex. 2 at 48-49.)  In so ruling, Mr. Riker also rejected plaintiff's First Amendment free speech defense[7] and found that there were no procedural defects[8] under California's Public Safety Officers' Procedural Bill of Rights Act ("POPBRA").

On January 11, 2006, Urrutia, as City Manager, informed plaintiff in a letter, captioned "RE:  Advisory Arbitration – Decision and Recommendation," that "[he] accept[ed] the advisory decision [of the arbitrator] and sustain[ed] the termination of [plaintiff's] employment with the City of Rocklin."  Urrutia enclosed with the letter a copy of Mr. Riker's "advisory award," which provided that "the Arbitrator's recommendation to the City Manager is that the Department's decision to terminate [plaintiff] for cause be sustained and the grievance/appeal be denied."  (Id. at Ex. 3.)

---

[7] Plaintiff argued he could not be disciplined or terminated in retaliation for speaking out against the police department because his comments raised issues of a public concern which were protected by the First Amendment.

[8] Plaintiff argued Siemens committed perjury and offered a forged "General Order 3" into evidence at the arbitration hearing to establish plaintiff violated a general order that did not exist at the time of the alleged violation.  Mr. Riker overruled plaintiff's objection to the General Order and admitted the order into evidence.

5

On February 16, 2007, plaintiff filed the instant action in this court against defendants, seeking reinstatement to his position as police sergeant, back pay with interest, attorneys' fees and costs and punitive damages.  Plaintiff alleges that contrary to the arbitrator's findings, he was terminated by defendants for reporting violations of law by the police department to governmental agencies and the grand jury[9] and for refusing to break the law, as directed by his superiors.  Plaintiff alleges claims against defendants for violation of plaintiff's constitutional rights (free speech, procedural and substantive due process and equal protection) pursuant to 42 U.S.C. section 1983 and for violation of plaintiff's rights pursuant to California's "whistleblowers" statute, California Labor Code section 1102.5, and POPBRA, California Government Code section 3309.5(e).  (Compl., filed Feb. 16, 2007.)

**STANDARD**

Under Federal Rule of Civil Procedure 12(c), any party may move for judgment on the pleadings at any time after the pleadings are closed.  Judgment on the pleadings is available when, on the face of the pleadings, no material issues of fact remain to be resolved and the moving party is entitled to judgment as a matter of law.  <u>Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.</u>, 896 F.2d 1542, 1550 (9th Cir. 1990).  A motion for judgment on the pleadings should be granted if "it

---

[9] Among other things, plaintiff alleges he was terminated for reporting about the department's illegal use of government funds to purchase dinners for officers in the citations quota program, the operation of an illegal quota program, general misuse of public funds, and officers' and their family members' use of government vehicles for personal use.

6

appears beyond a reasonable doubt the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Morgan v. County of Yolo, 436 F. Supp. 2d 1152, 1155 (E.D. Cal. 2006).

A party may move for only partial judgment on the pleadings. Strigliabotti v. Franklin Resources, Inc., 399 F. Supp. 2d 1094, 1097 (N.D. Cal. 2005). In ruling on the motion, the court may consider, in addition to the pleadings themselves, any document incorporated by reference into the pleadings. United States v. Wood, 925 F.2d 1580, 1582 (7th Cir. 1991). A court may also consider materials of which it could, or has, taken judicial notice. Morgan, 436 F. Supp. 2d at 1155.

**ANALYSIS**

**A.   First Claim for Relief for Violation of Plaintiff's Equal Protection Rights**

In his first claim for relief, plaintiff alleges defendants violated his rights to equal protection by treating him "less favorably in the terms and conditions of employment and sustained numerous adverse actions including suspension and termination from employment." (Compl., ¶ 87.) He alleges his constitutional equal protection rights were violated because "other similarly situated individuals were not selected and sought for punishment" and "[p]laintiff was treated less favorably in the terms and conditions of employment." (Compl., ¶ 86.) Plaintiff expressly bases these allegations on the United States Supreme Court's decision in Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). (Compl. at 25:3-4.) There, the Supreme Court held that an equal protection claim may be brought by a "class-of-one"

7

where a "plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Id. In other words, a plaintiff does not have to allege membership in any particular class, so long as the plaintiff alleges he was arbitrarily treated differently from other similarly situated employees. Id.

Defendants move to dismiss this claim on the basis of the Supreme Court's recent decision in Engquist v. Or. Dept. of Agriculture, 128 S. Ct. 2146 (2008). In Engquist, the Court held that the "class-of-one" equal protection claims, authorized by Village of Willowbrook, are not available in the public employment context. Id. at 2157.

> In short, ratifying a class-of-one theory of equal protection in the context of public employment would impermissibly 'constitutionalize the employee grievance.' 'The federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies.' Public employees typically have a variety of protections from just the sort of personnel actions about which Engquist complains, but the Equal Protection Clause is not one of them.

Id. (internal citations omitted).

Engquist is controlling of the issue here. Plaintiff does not allege membership in any particular class; indeed, he bases this claim for relief expressly on a class-of-one theory (Compl. at 25-26), which under Engquist is no longer a viable theory for public employee plaintiffs. Id. at 2155 (holding that the "Equal Protection Clause [is not] implicated . . . where, as here, government employers are alleged to have made an *individualized*, subjective personnel decision in a seemingly arbitrary or irrational manner") (emphasis added). Judgment on the pleadings

8

is therefore granted in favor of defendants as to plaintiff's first claim for relief.

However, the court grants plaintiff leave to amend with respect to this claim. In Engquist, the Court recognized that its decision did not eradicate all equal protection claims by public employees against their public employers. Id. The Court stated that their prior cases make clear that the "Equal Protection Clause is implicated when the government makes class-based decisions in the employment context treating distinct groups of individuals categorically different." Id. (citing e.g. Beazer, 440 U.S. at 593 [upholding city's exclusion of methadone users from employment under rational basis review]; Martin, 440 U.S. at 199-201 [holding classification between teachers who had complied with a continuing-education requirement and those who had not rational and not violative of the Equal Protection Clause]). What is foreclosed by the Court's decision is claims such as Engquist's and plaintiff's, in this case, that allege simply *individualized*, subjective personnel decisions that were made on an arbitrary and irrational basis. To be viable as an equal protection claim, a public employee plaintiff must allege some *class*-based treatment where a distinct *group* of individuals is treated differently.

Here, plaintiff asserts that construed broadly and in his favor, his complaint alleges that he is a member of a distinct group, those employees who refused to participate in criminal activity and reported the illegal activity as mandated by law, and that this group was treated arbitrarily and unfairly in comparison to those other employees who participated in the

9

illegal activities. The court does not agree that these facts are alleged in the complaint. Plaintiff expressly based this claim for relief on a class-of-one theory, and the facts alleged in the complaint support only that theory. The court will, however, grant plaintiff leave to amend to assert facts, if such facts exist, which meet the Engquist standards of class-based differential treatment.[10] Fed. R. Civ. P. 15(a) (providing that "leave [to amend] is to be freely given when justice so requires"); Martinez v. Newport Beach, 125 F.3d 777, 785 (9th Cir. 1997) (recognizing under Rule 15, "leave to amend should be granted unless amendment would cause prejudice to the opposing party, is sought in bad faith, is futile, or creates undue delay").

**B. Second Claim for Relief for Violation of Plaintiff's Substantive Due Process Rights**

In his second claim for relief, plaintiff alleges that "the conduct and statements of [defendants] have deprived . . . plaintiff of his chosen profession and that said findings, charges and statements have been and are false and fraudulent." (Compl., ¶ 95.) Plaintiff also alleges that defendants, due to "'malicious, irrational and/or plainly arbitrary' motivations have taken the property interest of plaintiff in [his] career and deprived him of the opportunity for future employment by means of repeatedly charging plaintiff with moral turpitude when no such

---

[10] Defendants' citation to Rule 16 as the standard for granting leave to amend is incorrect. While a scheduling order is in place in this case, the court is presently considering defendants' Rule 12(c) motion, and thus, the propriety of granting leave to amend is governed by Rule 15.

10

conduct occurred, with the concurrent effect of eliminating opportunity for plaintiff to work as a police officer in any other department." (Compl., ¶ 96.)

Defendants assert these allegations do not sufficiently allege a substantive due process violation for deprivation of one's chosen profession. To sustain a substantive due process claim, a plaintiff must allege facts demonstrating a deprivation of "life, liberty or property in such a way that shocks the conscience or interferes with rights implicit in the concept of ordered liberty." Nunez v. City of Los Angeles, 147 F.3d 867, 871 (9th Cir. 1998). The Ninth Circuit has recognized a plaintiff's liberty interest in pursuing an occupation of his choice. Lowry v. Barnhart, 329 F.3d 1019, 1023 (9th Cir. 2002). In that regard, the Ninth Circuit has held that "a plaintiff can make out a substantive due process claim if [he] is unable to pursue an occupation and this inability is caused by government actions that are arbitrary and lacking a rational basis." Engquist v. Or. Dept. of Agriculture, 478 F.3d 985, 997 (9th Cir. 2007). However, the Ninth Circuit has expressly limited occupational liberty claims, under the substantive due process clause:

> to extreme cases, such as government blacklist, which when circulated or otherwise publicized to prospective employers effectively excludes the blacklisted individual from his occupation, much as if the government had yanked the license of an individual in an occupation that requires licensure.

Id. at 997-98 (citation and internal quotation omitted).

To determine how significant the government's interference with a plaintiff's job prospects must be to constitute a denial

11

of the right to pursue a profession, the court in <u>Engquist</u> expressly adopted the standard set forth by the Seventh Circuit in <u>Bordelon v. Chi. Sch. Reform Bd.</u>, 233 F.3d 524 (7th Cir. 2000). <u>Id.</u> at 998. There, the Seventh Circuit held, that to bring an occupational liberty claim, a plaintiff must show that the "character and circumstances of a public employer's stigmatizing conduct or statements are such as to have destroyed an employee's freedom to take advantage of other employment opportunities." <u>Bordelon</u>, 233 F.3d at 531. It is not enough that the employer's conduct had some adverse effect on the employee's job prospects. "Instead, the employee must show that the stigmatizing actions make it virtually impossible for the employee to find new employment in his chosen field." <u>Id.</u>

As support for their argument, defendants cite two Oregon district court opinions wherein the courts dismissed the plaintiffs' claims for deprivation of occupational liberty. <u>Hogan v. Calvin Smith</u>, 2008 WL 183077 (D. Or. Jan. 16, 2008); <u>Scruggs v. Josephine County Sheriff's Dept.</u>, 2008 WL 608581 (D. Or. Mar. 4, 2008). However, these cases are inapposite since they involved summary judgment motions where the question was whether the plaintiffs produced sufficient *evidence* to support their claims. <u>Id.</u> Here, to the contrary, the issue is the sufficiency of plaintiff's complaint; namely, whether under the federal, liberal notice pleading standards, plaintiff's complaint adequately states a claim.

The court finds that it does. In <u>Hogan</u>, relied on by defendants, the court noted that the plaintiff's complaint there adequately stated a claim by alleging in one simple paragraph

12

that: "all defendants communicated false information to the public 'in order to prevent [Hogan] from obtaining new employment." 2008 WL 183077, * 6 (holding that "while under the liberal notice pleading standards of the [Federal Rules] Hogan may state a cause of action for deprivation of her interest in occupational liberty, she has not, however, by affidavit or otherwise, set forth specific facts to show there is genuine issue for trial.")

Here, as set forth above, plaintiff's allegations are far more detailed and complete than in Hogan. Plaintiff alleges that he has been "deprived" of his "chosen profession" by the "malicious, irrational and/or plainly arbitrary" acts and motivations of defendants, and that defendants' conduct, in charging plaintiff with acts of "moral turpitude"[11] has resulted in the "eliminat[ion]" of any opportunity plaintiff has to work as "a police officer in any other department." (Compl., ¶s 95, 96.) Under Rule 8, such allegations sufficiently state a claim for relief for deprivation of plaintiff's interest in occupational liberty. Therefore, defendants' motion as to this claim is DENIED.

**C.    Fourth Claim for Relief for Violation of Plaintiff's Criminal Due Process Rights**

Plaintiff claims that his criminal due process rights were violated because he was retaliated against by defendants for

---

[11] Contrary to defendants' argument, plaintiff is not required to allege that he was ultimately *terminated* for acts of moral turpitude. Plaintiff has alleged that defendants publicly and falsely charged him with acts of moral turpitude which resulted in the elimination of any opportunity he has to work as a police officer. Such allegations are sufficient to state an occupational liberty claim. Hogan, 2008 WL 183077, * 6.

13

disclosing materials that he believed were mandated by Brady v. Maryland, 373 U.S. 83 (1963). (Compl., ¶ 117.) Defendants argue plaintiff does not have standing to assert such a claim.

Pursuant to Brady, criminal prosecutors have a duty to disclose evidence to criminal defendants when the evidence is material and favorable to the defendant. 373 U.S. at 87. If there is a failure to do so, a criminal defendant may assert a due process violation pursuant to the Fifth and Fourteenth Amendments. Id. Here, however, plaintiff is not a criminal defendant who alleges an injury caused by defendants' failure to produce evidence required by Brady, and thus, he has no standing to assert a violation thereunder.

Plaintiff cites no authority to the contrary, establishing a non-criminal defendant's right to bring a violation of Brady. The gravamen of this claim for relief is defendants' alleged wrongful retaliation against plaintiff. As to that issue, plaintiff properly asserts other claims for relief in his complaint to seek redress for unlawful retaliation.[12] (See Compl., 3rd, 5th and 6th claims for relief.) A Fifth Amendment criminal due process claim is not the appropriate vehicle.

As such, defendants' motion as to plaintiff's fourth claim for relief is GRANTED.

## CONCLUSION

For the foregoing reasons, defendants' motion for partial judgment on the pleadings is GRANTED with respect to plaintiff's

---

[12] As plaintiff does not argue in his opposition that he may bring a Brady claim on behalf of third-party criminal defendants, the court does not discuss defendants' arguments on that issue.

14

1 first, fourth, fifth and sixth claims for relief and is DENIED
2 with respect to plaintiff's second claim for relief.  Plaintiff
3 is granted leave to amend with respect to his first claim for
4 relief.  Plaintiff shall file and serve a first amended
5 complaint, in compliance with this order, within 20 days of the
6 date of this order.  Defendants shall have 20 days thereafter to
7 file a response thereto.

    IT IS SO ORDERED.

DATED: September 22, 2008

_____
FRANK C. DAMRELL, Jr.
UNITED STATES DISTRICT JUDGE