UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

RICK EATON,

        Plaintiff,

   v.

MARK J. SIEMENS, an individual
and in his capacity as Chief
of Police, CARLOS A. URRUTIA,
an individual and in his
capacity as City Manager, CITY
OF ROCKLIN, a public
municipality and public
entity,

        Defendants.

NO. CIV. S-07-315 FCD KJM

<u>MEMORANDUM AND ORDER</u>

----oo0oo----

    This matter is before the court on defendants'[1] motion to dismiss plaintiff Rick Eaton's first claim for relief in the first amended complaint, alleging violation of his equal protection rights, on the ground it fails to state a claim upon

---

[1]   Defendants are the City of Rocklin (the "City"), Mark J. Siemens ("Siemens"), Chief of Police, and Carlos A. Urrutia ("Urrutia"), City Manager (collectively, "defendants").

which relief can be granted.  Fed. R. Civ. P. 12(b)(6).
Defendants move in the alternative to strike, pursuant to Federal
Rule of Civil Procedure 12(f),[2] certain specific allegations
pertaining to the equal protection claim.  Plaintiff opposes both
motions.[3]

As set forth in the court's Memorandum and Order of
September 22, 2008 ("Sept. 22 Order"), granting in part and
denying in part defendants' motion for judgment on the pleadings,
plaintiff may assert an equal protection claim, in this action
involving public employment, only if he can allege facts
demonstrating class-based differential treatment.  In <u>Engquist v.
Or. Dept. of Agric.</u>, 128 S. Ct. 2148 (2008), the United States
Supreme Court invalidated "class-of-one" equal protection claims,
previously authorized by <u>Village of Willowbrook v. Olech</u>, 528
U.S. 562 (2000),[4] in the public employment context.  However, the
Court in <u>Engquist</u> did not eradicate all equal protection claims
by public employees against their public employers.  (Sept. 22
Order at 9:3-10 [recognizing that the Court made clear that its

---

[2]    All further references to a "Rule" are to the Federal
Rules of Civil Procedure.

[3]    Because oral argument will not be of material
assistance, the court orders this matter submitted on the briefs.
E.D. Cal. L.R. 78-230(h).

[4]    In <u>Village of Willowbrook</u>, the Court held that an equal
protection claim may be brought by a "class-of-one" where a
"plaintiff alleges that [he] has been intentionally treated
differently from others similarly situated and that there is no
rational basis for the difference in treatment."  528 U.S. at
564.  In other words, a plaintiff does not have to allege
membership in any particular class, so long as the plaintiff
alleges he was arbitrarily treated differently from other
similarly situated employees.  <u>Id.</u>

prior cases establish that "the Equal Protection clause is
implicated when the government makes class based decisions in the
employment context treating distinct groups of individuals
categorically different."]) Thus, the Court in Engquist held
that a public employee can state an equal protection claim if he
alleges facts showing "some *class*-based treatment where a
distinct *group* of individuals is treated differently." (Sept. 22
Order at 9:21-22.) (emphasis in original.)

In the September 22 Order, the court found that plaintiff
had not alleged these requisite facts in his complaint, and thus,
it granted defendants' motion for judgment on the pleadings as to
plaintiff's equal protection claim, which had been expressly
based on Village of Willowbrook's "class-of-one" theory.
However, the court granted plaintiff leave to amend. (Id. at
9:23-10:13.) Plaintiff filed his first amended complaint on
October 11, 2008. Defendants now move, again, to dismiss
plaintiff's equal protection claim, arguing plaintiff fails to
allege sufficient facts to demonstrate class-based differential
treatment, thereby satisfying Engquist's constitutional
standards.

For the reasons set forth below, the court DENIES
defendants' instant motion. Plaintiff has adequately alleged
that he is a member of a distinct group of employees who refused
to participate in criminal activity and/or reported illegal
activity by defendants as mandated by law, and that this group of
individuals was treated arbitrarily and unfairly in comparison to
those other employees who participated in illegal activities and
refused to report violations of the law by the City and its

3

1    employees.

2        The court also DENIES defendants' alternative motion to
3    strike, pursuant to Rule 12(f), certain allegations pertaining to
4    the equal protection claim.  All of the challenged allegations
5    are relevant to plaintiff's claims of differential treatment and
6    are not unduly prejudicial to the persons involved in the
7    incidents.

8                                **BACKGROUND**

9        As alleged in the first amended complaint, plaintiff asserts
10   defendants established different classes of employees for the
11   purpose of imposing discipline.  (FAC, filed Oct. 11, 2008, at
12   ¶ 85.)  Plaintiff alleges the creation of these different classes
13   resulted in the disparate treatment of similarly situated
14   employees who were part of distinct groups.  (Id. at ¶ 85.1.)
15   More specifically, plaintiff alleges that defendant Siemens
16   repeatedly referred to employees who were willing to violate the
17   law and willing to not report violations of the law by the City
18   and its employees as "team players," and those who would not
19   violate the law and reported violations of the law and suspected
20   violations of the law by defendants as "not team players"
21   (referred to herein as the "non-team players").  (Id.)  Defendant
22   Siemens repeatedly encouraged the "non-team players," to "get on
23   the team."  (Id.)

24       Plaintiff alleges he was a member of the "non-team players,"
25   a distinct group of employees who refused to participate in
26   criminal activity and who complained of and reported illegal
27   activity by the City and its employees as mandated by law.  This
28   group, plaintiff alleges, was treated arbitrarily and unfairly in

comparison to those other employees, the "team players," who participated in the illegal activity and/or who failed and refused to report the illegal activity by defendants. (<u>Id.</u> at ¶ 85.2.)

Plaintiff names specific members of his "non-team players" group, including Bryon Green, Tia Bostian, Robert Nunez, Freda Anderson, David Cox, and Lee Browning. (<u>Id.</u> at ¶s 85.2, 85.13, 85.14, 85.15, 85.16, 85.17, 85.18.) These employees, plaintiff alleges, also sustained adverse employment actions based on their refusal to participate in criminal activity and/or their reports of illegal activity by the City and its employees. (<u>Id.</u>)

Plaintiff provides numerous examples of how he, as a member of this distinct group, was treated less favorably than those employees in the "team players" group. (<u>Id.</u> at ¶s 85.4, 85.5, 85.6, 85.7, 85.8, 85.9, 85.10, 85.11, 85.12.) For example, plaintiff describes how he was brought up on charges and punished by defendants as a result of a conversation he had with another officer about her feelings and beliefs regarding having had a breast augmentation; plaintiff alleges that other employees, including Lt. Johnstone, who were part of the "team players" group, were not similarly punished for the same type behavior. (<u>Id.</u> at ¶ 85.4(a)-(g).) In another example, plaintiff describes that he was ultimately terminated for having revealed violations of the law and criminal activity by the City and its employees, yet other employees, like Steve Newman, were hired and promoted despite convictions for, among other things, theft of police evidence. (<u>Id.</u>)

Plaintiff also provides examples of how the other members of his "non-team players" group were treated arbitrarily and unfairly in comparison to the "team-players."  Plaintiff alleges that after Byron Green told the truth and refused to participate, at defendants' counsel's urging, in creating and making false statements against plaintiff during arbitration proceedings, Green was brought up on disciplinary charges.  Green ultimately felt compelled to resign in lieu of going through his own termination proceedings.  (Id. at ¶ 85.13(a).)  Green also told defendants' counsel that he witnessed defendant Siemens' illegal, personal use of an assigned police vehicle; Green further told defendants' counsel the truth about the City's unlawful Red Light Ticket quota program.  After providing this truthful information, Green was brought up on disciplinary charges.  (Id. at ¶ 85.13(b).)

Plaintiff alleges Tia Bostian complained of sexual harassment and within one year of her complaint she was fired; Bostian also was charged with dishonesty and moral turpitude for her personal use of department computers.  Unlike Bostian, plaintiff alleges Community Services Officer Robert Nunez received only minor discipline and was permitted to retain his job despite his distribution of pornographic evidence on department computers.  (Id. at ¶ 85.14(a)-(e).)

Plaintiff alleges, however, that later Robert Nunez became a "non-team player" when he filed a complaint against a fellow dispatcher for misconduct similar to the above.  After making this complaint, plaintiff alleges Nunez became the focus of an Internal Affairs investigation.  He ultimately negotiated a

6

1   retirement agreement with defendants in lieu of any disciplinary

2   action being taken against him.  (Id. at ¶ 85.15(a)-(b).)

3        Plaintiff also alleges that Freda Anderson was part of the

4   "non-team players" group.  Plaintiff alleges after she sustained

5   two on-duty work injuries, defendants challenged her fitness to

6   return to duty as an Animal Control Officer and ultimately

7   precluded her from returning to work because Anderson was

8   prepared to give favorable testimony to plaintiff in his

9   arbitration proceedings.  Unlike Anderson, plaintiff alleges

10  defendants did not challenge another Animal Control Officer's

11  fitness to return to work after sustaining an off-duty injury.

12  (Id. at ¶ 85.16(a)-(f).)

13       Additionally, plaintiff identifies David Cox as another

14  member of his group.  Plaintiff asserts Cox was unfairly

15  disciplined and brought up on false charges regarding his report

16  writing because Cox testified truthfully in favor of plaintiff at

17  his arbitration proceedings.  (Id. at ¶ 85.17(a)-(c).)

18       Finally, plaintiff alleges Lee Browning is a member of the

19  "non-team players" group.  Browning also testified in plaintiff's

20  favor at his arbitration proceeding; plaintiff alleges that as a

21  result of his truthful testimony, describing his knowledge of

22  Officer Newman's arrest for theft of police evidence involving

23  pornographic materials and his efforts to have Newman removed as

24  a Rocklin Police Officer, Browning has had all of his

25  administrative and supervisory authority as a volunteer City

26  firefighter removed.  He also is now precluded from taking his

27  first responder vehicle home.  (Id. at § 85.18(a)-(d).)

28

1                            **STANDARD**

2        **A.   Motion to Dismiss**

3        On a motion to dismiss, the allegations of the complaint

4   must be accepted as true.  <u>Cruz v. Beto</u>, 405 U.S. 319, 322

5   (1972).  The court is bound to give plaintiff the benefit of

6   every reasonable inference to be drawn from the "well-pleaded"

7   allegations of the complaint.  <u>Retail Clerks Int'l Ass'n v.</u>

8   <u>Schermerhorn</u>, 373 U.S. 746, 753 n.6 (1963).  Thus, the plaintiff

9   need not necessarily plead a particular fact if that fact is a

10  reasonable inference from facts properly alleged.  <u>See</u> <u>id.</u>

11       Nevertheless, it is inappropriate to assume that the

12  plaintiff "can prove facts which it has not alleged or that the

13  defendants have violated the . . . laws in ways that have not

14  been alleged."  <u>Associated Gen. Contractors of Calif., Inc. v.</u>

15  <u>Calif. State Council of Carpenters</u>, 459 U.S. 519, 526 (1983).

16  Moreover, the court "need not assume the truth of legal

17  conclusions cast in the form of factual allegations."  <u>United</u>

18  <u>States ex rel. Chunie v. Ringrose</u>, 788 F.2d 638, 643 n.2 (9th

19  Cir. 1986).

20       Ultimately, the court may not dismiss a complaint in which

21  the plaintiff alleged "enough facts to state a claim to relief

22  that is plausible on its face."  <u>Bell Atlantic Corp. v. Twombly</u>,

23  127 S. Ct. 1955, 1973 (2007).  Only where a plaintiff has not

24  "nudged [his or her] claims across the line from conceivable to

25  plausible," is the complaint properly dismissed.  <u>Id.</u>  "[A] court

26  may dismiss a complaint only if it is clear that no relief could

27  be granted under any set of facts that could be proved consistent

28  with the allegations."  <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S.

                                  8

506, 514 (2002) (quoting Hudson v. King & Spalding, 467 U.S. 69, 73 (1984)).

In ruling upon a motion to dismiss, the court may consider only the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201. See Mir v. Little Co. of Mary Hospital, 844 F.2d 646, 649 (9th Cir. 1988); Isuzu Motors Ltd. v. Consumers Union of United States, Inc., 12 F.Supp.2d 1035, 1042 (C.D. Cal. 1998).

**B.   Motion to Strike**

Federal Rule of Civil Procedure 12(f) enables the court by motion by a party or by its own initiative to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  The function of a 12(f) motion is to avoid the time and expense of litigating spurious issues.  Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993), rev'd on other grounds, 510 U.S. 517 (1994); see also 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1380 (2d ed. 1990).  Rule 12(f) motions are generally viewed with disfavor and not ordinarily granted because of the limited importance of the pleadings in federal practice. Bureerong v. Uvawas, 922 F. Supp. 1450, 1478 (C.D. Cal. 1996).  A motion to strike should not be granted unless it is absolutely clear that the matter to be stricken could have no possible bearing on the litigation.  Lilley v. Charren, 936 F. Supp. 708, 713 (N.D. Cal. 1996).

**ANALYSIS**

**A.    Motion to Dismiss**

Preliminarily, the court notes that in large part defendants' motion to dismiss attempts to *disprove* the allegations of the amended complaint.  Defendants argue that plaintiff's equal protection claim must be dismissed because the above persons *are not* part of any group of employees that refused to participate in criminal activity and complained of or reported illegal activity by the City and its employees as mandated by law.  Defendants make various arguments, often citing to materials outside the complaint, to attempt to *prove* that plaintiff cannot allege an identifiable class of persons sufficient to meet the standards of Enqquist.[5]

As a general matter, defendants' arguments are unavailing because on a motion to dismiss this court must assume the truth of the allegations plead.  Cruz v. Beto, 405 U.S. 319, 322 (1972).  Thus, this court must assume that each of the factual allegations set forth in the "Background" section above are true.  This court cannot pierce behind the allegations at this juncture.  Retail Clerks Int'l Ass'n v. Schermerhorn, 373 U.S. 746, 753 n.6 (1963) (recognizing the court is bound to give plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint).

---

[5]    On a Rule 12(b)(6) motion, the court may consider materials extraneous to the complaint that are properly judicially noticed.  Defendants cite to some such materials, although they do so in an effort to disprove the factual allegations of the complaint--allegations that this court must assume, at this point, are true.  Thus, defendants' reliance on these extrinsic materials is not compelling.

Defendants assert that plaintiff has done nothing more than state legal conclusions in his pleading.  The court does not agree.  As is clear from the description of the facts above, plaintiff's complaint provides abundant facts supporting the equal protection claim.  Plaintiff specifically identifies members of his alleged group and describes in detail how those persons were treated differently, arbitrarily and unfairly, in comparison to other, specific members of the "team-players" group, who received allegedly favorable treatment.

Thus, for this over-arching reason, defendants' motion should be DENIED.

However, the court also finds defendants' specific challenges to the allegations describing plaintiffs' group members unpersuasive.  With respect to each of the group members, plaintiff has adequately alleged that due to their refusal to participate in criminal activity *and/or* based on their complaints or reports of illegal activity by the City and its employees, these persons were considered "non-team players" by defendants and were treated arbitrarily and unfairly in comparison to those "team-players" who participated in illegal activities and did not report about wrongdoing by defendants.[6]  (FAC, ¶s 85.2, 85.13,

---

[6]   In some respects in their motion, defendants argue that because a certain alleged group member did not *both* refuse to participate in criminal activity *and* report about illegal activity by defendants, that person cannot be considered part of plaintiff's identified group.  At times in plaintiff's complaint, he describes the relevant group using the conjunctive "and," implying that members of the group *both* refused to participate in criminal activity *and* report wrongdoing by defendants.  However, on a motion to dismiss the court must liberally read the complaint and construe all facts alleged favorably to plaintiff.

(continued...)

85.14, 85.15, 85.16, 85.17, 85.18.)  Under the Federal Rules'
notice-pleading standards, such allegations *alone* are sufficient
to state an equal protection claim under <u>Engquist</u>.  Fed. R. Civ.
P. 8(a)(2) (requiring only a "short and plain statement of the
claim showing that the pleader is entitled to relief"); <u>Bell
Atlantic</u>, 127 S. Ct. at 1973 (holding that only where a plaintiff
has not "nudged [his or her] claims across the line from
conceivable to plausible," is the complaint properly dismissed).

     In this case, however, plaintiff did not stop with these
general allegations.  He chose instead to provide additional
facts, giving, in many respects, specific examples of the
wrongdoing confronted by himself and the other employees within
his class.  Such further, more specific allegations are not
required under the Federal Rules but they are permitted.  Here,
the additional allegations provide defendants with more notice,
than is required by the Rules, of the nature of plaintiff's claim
and the bases for which he will allege liability.

     For example, plaintiff describes (1) as to Green, that he
was forced to resign as a result of his favorable testimony to
plaintiff at an arbitration proceeding and after disclosing his
knowledge of misconduct by Siemens involving Siemens' personal
use of his police vehicle; (2) as to Bostian, she was ultimately
terminated for reporting sexual harassment by defendants; (3) as
to Nunez, though once considered a "team-player," he became a
non-team player when he reported misconduct by a co-worker

─────────────────

     [6](...continued)
As such, the court considers plaintiff's identified class as
members who did either or both of this conduct.

1  involving distribution of pornographic materials, and he was
2  ultimately forced to retire; (4) as to Anderson, her fitness to
3  return to work after a work-related injury was challenged by the
4  City, and she was not allowed to return to work after she was
5  prepared to give favorable testimony to plaintiff in arbitration
6  proceedings; (5) as to Cox, he was brought up on disciplinary
7  charges after refusing to give false testimony and instead
8  testifying favorably to plaintiff in arbitration proceedings; and
9  (6) as to Browning, he was stripped of his normal duties as a
10 volunteer firefighter because he refused to give false testimony
11 at plaintiff's arbitration proceedings and due to his complaints
12 about Officer Newman's retention as a police officer, despite
13 Newman's conviction for theft of police evidence involving
14 pornographic materials.  With respect to most of these persons,
15 plaintiff also provides specific examples of how similar conduct
16 by members of the "team-players" group was not disciplined by
17 defendants, and/or how despite similar conduct by "team-players,"
18 they received favorable treatment by defendants.

19     Plaintiff's allegations meet the standards of _Engquist_.
20 Plaintiff has alleged facts to show that defendants have made
21 "class-based decisions . . . treating distinct groups of
22 individuals categorically different."  128 S. Ct. at 2155.
23 Unlike his original complaint which only alleged _individualized_,
24 subjective personnel decisions that were made on an arbitrary and
25 irrational basis, in the amended complaint, plaintiff has alleged
26 "_class_-based treatment where a distinct _group_ of individuals is
27 treated differently." (Sept. 22 Order at 9:16-22.)  Accordingly,
28 defendants' motion to dismiss is DENIED.

13

**B.   <u>Motion to Strike</u>**

Defendants alternatively move to strike the above referenced allegations pertaining to the other members of plaintiffs' alleged group of "non-team players," including Green, Bostian, Nunez, Cox, Anderson, and Browning (FAC at ¶s 85.2 and 85.13-85.18), on the ground the allegations fail to establish that these persons are members of a group that refused to engage in criminal activity and reported violations of law by the City and its employees.  For the reasons set forth above, the court finds that the allegations sufficiently establish these persons' participation in the "non-team players" group which was allegedly treated differently, and thus, there is no basis to strike the allegations under Rule 12(f).  These are the critical allegations establishing a cognizable class of persons sufficient to state an equal protection claim under <u>Engquist</u>.  As such, the court cannot find the allegations "immaterial, impertinent, or scandalous." Fed. R. Civ. P. 12(f).

Finally, defendants move to strike certain allegations supporting the equal protection claim, alleging they do not establish that the relevant persons "participated in illegal activity and/or [failed] and [refused] to report such illegal activity," and thus, plaintiff has not alleged that these persons were members of the class allegedly receiving more favorable treatment.  (<u>See</u> FAC at ¶s 85.4-85.5, 85.6-85.8, 85.9, 85.12.) Defendants also maintain that in other respects these allegations are irrelevant to the claim and present scandalous facts designed to embarrass and harass the City employees involved in the incidents.

1    First, defendants read these allegations too narrowly.  In

2 most respects, the allegations set forth how similar persons, who

3 were considered "team-players" by defendants, engaged in

4 misconduct similar to the "non-team players" but were not

5 similarly disciplined by defendants.  To the extent these

6 allegations do not provide such a specific comparison, the

7 allegations provide context and background to the particular

8 incidents described, and thus, they are properly alleged in the

9 complaint.  Lilley v. Charren, 936 F. Supp. 708, 713 (N.D. Cal.

10 1996) (holding that a motion to strike should not be granted

11 unless it is absolutely clear that the matter to be stricken

12 could have no possible bearing on the litigation).  Moreover, to

13 the extent certain of these allegations raise facts of a highly

14 personal or sexual nature, the court finds the allegations

15 nonetheless pertinent to plaintiff's equal protection claim.  The

16 allegations do not unduly prejudice the persons involved, and

17 they demonstrate how certain misconduct, some of a sexual nature,

18 by employees within the "team players" group was not punished by

19 defendants, yet similar conduct by "non-team players" was

20 disciplined.

21    In sum, Rule 12(f) motions are generally viewed with

22 disfavor and ordinarily should be denied because of the limited

23 importance of the pleadings in federal practice.  Bureerong v.

24 Uvawas, 922 F. Supp. 1450, 1478 (C.D. Cal. 1996).  Such is the

25 case here.  The court finds no grounds to strike the subject

26 allegations as they provide, at a minimum, context to plaintiff's

27 equal protection claim, if not directly material facts to

28 establish the alleged differential treatment, and they are not

1  "scandalous" within the meaning of the Rule.

2                          **CONCLUSION**

3        For the foregoing reasons, defendants' motion to dismiss

4  plaintiff's equal protection claim or, alternatively, to strike

5  certain allegations supporting that claim is DENIED in its

6  entirety.

7        IT IS SO ORDERED.

8  DATED: January 14, 2009

9  _____

10                          FRANK C. DAMRELL, JR.
                            UNITED STATES DISTRICT JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                              16