UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

RICK EATON,   No. 2:07-cv-00315-MCE-CKD

    Plaintiff,

  v.   MEMORANDUM AND ORDER

MARK J. SIEMENS, an individual and in his capacity as Chief of Police, et al.,

    Defendants.

----oo0oo----

This matter is before the court on Defendants' motion for judgment on the pleadings. Plaintiff opposes the motion. For the reasons set forth below, Defendants' motion is granted.[1]

///
///
///
///

---

[1] Because oral argument will not be of material assistance, the Court orders this matter submitted on the briefs. E.D. Cal. Local Rule 230(g).

1

## BACKGROUND

The Court has recounted the relevant facts of this case in detail on a number of occasions. Thus, in the interest of brevity, the Court recounts only those facts necessary to provide sufficient context for the Court's analysis.

Plaintiff was a police officer with the City of Rocklin Police Department. The City terminated Plaintiff after he made a number of complaints regarding the allegedly criminal background of a fellow officer and engaged in conduct that was subversive to the efficient operation of the department.

In 2002, the department issued Plaintiff a 40-hour unpaid suspension for what it characterized as verbal harassment. Between 2002 and 2004, Defendants alleged that Plaintiff engaged in various conduct that undermined the order and efficient operation of the Rocklin Police Department. For example, as the court explained in its order of Defendant's motion for summary judgment, Plaintiff informed superiors of a fellow police officer's criminal background and discussed the matter within the department, despite warnings to refrain from doing so; Plaintiff engaged in confrontations over performance evaluations; Plaintiff criticized superiors for alleged improper personal use of police vehicles and for instituting what Plaintiff alleged were illegal ticketing incentive programs. (See generally id. at 4:12-8:22.)

///
///
///
///

Plaintiff proceeded to file an internal grievance for the 40-hour suspension he received in 2002 pursuant to the Memorandum of Understanding ("MOU") between the City of Rocklin and the Rocklin Police Officers Association (of which Plaintiff was a member) under their collective bargaining agreement.  On June 30, 2004, after a five-day evidentiary hearing, that grievance was denied by arbitrator Catherine Harris.  Harris found "just cause" for the City's 40-hour suspension of Plaintiff for violation of the verbal harassment policy."  (Id. at 8:23-28.)  Plaintiff was subsequently terminated as outlined by the Court in its previous Order:

> On November 1, 2004, [City Manager] Urrutia issued plaintiff a Notice of Termination setting forth the following charges: (1) plaintiff made malicious and threatening statements to his supervisor Newman on October 13, 2003 during a performance evaluation, including statements concerning the sexual orientation of Newman's ex-wife; (2) during October to December 2003, plaintiff made disparaging remarks about Newman during briefings and in conversations with his subordinates; (3) during that same period, plaintiff made disparaging remarks about Siemens during briefings and in conversations with subordinates; (4) during November 2003, while on duty, plaintiff offered to show a police report about Newman to Olivera to help Olivera in an internal affairs investigation; (5) in September 2004, plaintiff made inappropriate comments about the disposition of his verbal harassment grievance to Sergeant Vizzusi and Lieutenant Johnstone; and (6) plaintiff did not follow the mission of the department and the directions of the Chief of Police, and he refused to strictly adhere to the standards and policies of the department. The Notice indicated that all six charges described conduct violative of the Rocklin Police Department's Departmental Directive and Admonition, dated January 16, 2003.

(Mem. & Order at 9:6-10.)

///

///

3

1    Plaintiff's termination prompted a second evidentiary
2 hearing held in 2006.  That hearing was previously summarized as
3 follows:
4      On January 9, 2006, following a seven-day evidentiary
         hearing, in which 18 witnesses testified and 100
5        exhibits were moved into evidence, arbitrator William
         Riker issued a 49-page advisory decision, denying
6        plaintiff's grievance and sustaining each of the six
         charges against [P]laintiff contained in the Notice of
7        Termination.
8 (Id.)
9    On January 11, 2006, Urrutia issued a letter accepting the
10 arbitrator's advisory decision without modification and sustained
11 Plaintiff's termination.  Plaintiff subsequently filed a petition
12 for writ of mandate pursuant to California Code of Civil
13 Procedure section 1094.5 in the Superior Court for the County of
14 Placer.  However, Plaintiff voluntarily dismissed the state court
15 proceeding and filed the instant federal court action.
16    On April 10, 2007, defendants filed a motion to dismiss the
17 complaint, arguing that the action was barred by *res judicata*.
18 Specifically, "Defendants move[d] to dismiss [P]laintiff's
19 complaint on the ground the City's administrative decision
20 resulting in [P]laintiff's termination bars this action, which
21 either raises the same factual and legal issues presented in the
22 arbitration proceeding or issues which could have been raised in
23 that proceeding."  (Court's Mem. & Order, filed May 23, 2007,
24 [ECF No. 24] at 9:9-14)
25 ///
26 ///
27 ///
28 ///

4

1  The court issued a memorandum and order denying Defendants'
2  motion to dismiss on the grounds that "[t]he underlying
3  administrative proceeding was not of a judicial nature, in that
4  the arbitrator was not empowered to adjudicate the rights of the
5  parties before him, but rather, he offered only his advisory
6  opinion." (Id. at 3:4-7.)  Thus, the court held that the
7  administrative proceedings did not have any preclusive effect
8  upon Plaintiff's federal court claims.  (Id.)
9       On January 17, 2012, a three-judge panel of the Ninth
10 Circuit issued a unanimous opinion, holding that California's
11 doctrines of issue and claim preclusion prevent federal courts
12 from hearing a Section 1983 claim arising out of a public entity
13 terminating an employee where the issues were previously
14 litigated in an advisory arbitration proceeding.  See White v.
15 City of Pasadena 671 F.3d 918 (9th Cir. 2012).  Specifically, the
16 court explained, "[u]nder California law, a prior administrative
17 proceeding, if upheld on review (or not reviewed at all), will be
18 binding in later civil actions to the same extent as a state
19 court decision if 'the administrative proceeding possessed the
20 requisite judicial character.'" Id. at 927 (quoting  Runyon v.
21 Bd. of Tr., 48 Cal. 4th 760, 773 (2010)).  The court held that
22 state administrative decisions regarding public employment are of
23 sufficient judicial character to have preclusive effect in
24 subsequent federal court actions under California law.
25 ///
26 ///
27 ///
28 ///

5

1  Defendants now move for judgment on the pleadings under
2 Federal Rule of Civil Procedure 12(b)(c), arguing that, pursuant
3 to the Ninth Circuit's opinion in <u>White</u>, the arbitration
4 proceedings, conducted in accordance with the MOU, preclude
5 further litigation of Plaintiff's claims.

## STANDARD

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Moreover, Rule 12(h)(2) of the Federal Rules of Civil Procedure provides in relevant part that a defense of failure to state a claim upon which relief can be granted may be made by motion for judgment on the pleadings. Fed. R. Civ. P. 12(h). A motion for judgment on the pleadings pursuant to Rule 12(c) challenges the legal sufficiency of the opposing party's pleadings. <u>Westlands Water Dist. v. Bureau of Reclamation</u>, 805 F. Supp. 1503, 1506 (E.D. Cal. 1992). Any party may move for judgment on the pleadings after the pleadings are closed but within such time as to not delay trial. Fed. R. Civ. P. 12(c).

The standard for evaluating a motion for judgment on the pleadings is essentially the same as the standard applied to a Rule 12(b)(6) motion. <u>Dworkin v. Hustler Magazine, Inc.</u>, 867 F.2d 1188, 1192 (9th Cir. 1989).

///
///
///

6

A motion for judgment on the pleadings should only be granted if, accepting as true all material allegations contained in the nonmoving party's pleadings, the moving party "'clearly establishes that no material issue of fact remains to be resolved and that he [or she] is entitled to judgment as a matter of law.'"  Doleman v. Meiji Mut. Life Ins. Co., 727 F.2d 1480, 1482 (9th Cir. 1984) (quoting Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1368 (1969)); Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1989).

Judgment on the pleadings is also proper when there is either a "lack of cognizable legal theory" or the "absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988) (in the context of a Rule 12(b)(6) motion).  As such, Judgment on the pleadings is an appropriate procedural device for disposing of claims barred by the doctrine of res judicata.  See Dixon v. U.S. Postal Serv., 2011 WL 2748615 *5 (N.D. Cal.

## ANALYSIS

Defendants contend that the Ninth Circuit's opinion in White expressly contradicts this court's previous ruling on Defendants' motion to dismiss.  Specifically, Defendants maintain the holding in White upends the court's conclusions that the state administrative proceedings, confirming the legitimacy of Plaintiff's termination, lacked the necessary judicial character to have preclusive effect.

Thus, according to Defendants, the court should now grant its motion for judgment on the pleading on the basis of *res judicata*. Plaintiff counters that the arbitrator's non-binding advisory opinion, and Urritia's decision to uphold Plaintiff's termination, still cannot have <u>issue</u> preclusive effect because equal protection was not raised in the arbitration. Moreover, Plaintiff maintains that, unlike in <u>White</u>, there was no state proceeding affirming the arbitrator's decision, and thus, it cannot be given full faith and credit under the United States Constitution or 28 U.S.C. § 1783. Therefore, Plaintiff maintains the court must deny Defendants' motion for judgment on the pleadings.

State judicial proceedings receive the same full faith and credit in every federal court as they would have in the courts of the state in which the matter originated. 28 U.S.C. § 1783. Section 1783 "directs a federal court to refer to the preclusion law of the State in which judgment was rendered." <u>Marrese v. American Assoc. of Orthopaedic Surgeons</u>, 470 U.S. 373, 380 (1985) ("§ 1783 requires a federal court to look first to state preclusion law in determining the preclusive effects of a state court judgment"). Therefore, this court will apply California law to determine whether the arbitrator and commissioner's decision upholding Plaintiff's termination will preclude Plaintiff's claims asserted here.

///
///
///
///

8

1    The United States Supreme Court succinctly described the
2 doctrine of res judicata as follows:

> The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as res judicata.  Under the doctrine of claim preclusion, a final judgment forecloses successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.  Issue preclusion, in contrast, bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim.  By precluding parties from contesting matters that they have had a full and fair opportunity to litigate, these two doctrines protect against the expense and vexation attending multiple lawsuits, conserve judicial resources, and foster reliance on judicial action by minimizing the possibility of inconsistent decisions.

Taylor v. Sturgell, 553 U.S. 880, 892 (2008).

"Federal courts must give preclusive effect to state court reviewed administrative determinations under 28 U.S.C. § 1783 and to unreviewed administrative findings" of fact and of law. Eilrich v. Remas, 839 F.2d 630, 632 (9th Cir. 1988) (citing Marrese v. Am. Acad. of Orthopaedic Surgeons, 470 U.S. 373 (1985); Univ. of Tenn. v. Elliott, 478 U.S. 788 (1986). However, the state administrative proceedings must satisfy the requirements of fairness laid out in United States v. Utah Constr. & Mining Co., 384 U.S. 394 (1966).  Those requirements are:  first, the administrative agency must act in a judicial capacity; second, the agency must resolve disputed issues of fact properly before it; and third, the parties must have had an adequate opportunity to litigate.  Miller v. County of Santa Cruz, 39 F.3d 1030, 33 (9th Cir. 1994).

///
///

9

These three distinct "fairness requirements" must be satisfied before a prior administrative ruling can bar a Section 1983 action because such an administrative ruling, the Miller court emphasized, is only entitled to preclusive effect when the proceedings "[were] conducted with sufficient safeguards to be equated with a state court judgment." Id.

Here, Defendants are correct that the Ninth Circuit's holding in White invalidates the court's previous determination that the arbitrator's advisory opinion in this case lacked sufficient judicial character to have preclusive effect on Plaintiffs' federal claims. Indeed, the administrative proceeding in White was almost identical to the proceedings in this case. As was the case here,

> White's grievance proceeding was conducted in a judicial-like adversarial hearing in front of an impartial arbiter. Both White and the City were able to call and subpoena witnesses and elicit their testimony under oath, and to present oral and written argument. A verbatim transcript of the proceedings was produced. The City Manager was bound to apply the provisions of the MOU to the facts developed at the proceeding, and the City Manager issued a written decision with factual findings and reasoned explanations for his decision. Judicial review was available under section 1094.5.

White, 671 F.3d at 929. Moreover, in White, the court expressly held that the mere fact that the arbiter's decision was merely advisory[2] was insufficient to strip the proceedings of their judicial character.

///
///

---

[2] This was the court's sole basis for originally concluding that the proceedings lacked the requisite judicial character. (See Mem. & Order [ECF No. 24] at 12-13.)

10

As such, White compels the conclusion that the administrative proceedings in this case were sufficiently judicial in nature to have preclusive effect upon plaintiff's Section 1983 claims.[3]

Plaintiff's contention that White is irrelevant[3] because the administrative proceeding in White was "upheld on review by the state trial and appellate courts," whereas here, Plaintiff did not receive any review by a state tribunal, is simply unavailing. Indeed, Plaintiff's contention is belied by the precise language in White: "[u]nder California law, a prior administrative proceeding, if upheld on review (<u>or not reviewed at all</u>), will be binding in later civil actions." Id. at 927 (emphasis added).

Not only is the express language of White inimical to Plaintiff's argument, but Plaintiff's position is also contrary to Ninth Circuit precedent. Specifically, this case is almost identical to Miller, in which the Ninth Circuit gave preclusive effect to a state administrative proceeding. In Miller, the court affirmed a summary judgment ruling for the defendant in a Section 1983 action on the grounds that the previous state administrative ruling sustaining the plaintiff's termination had preclusive effect on the action pending in federal court. Miller, 39 F.3d at 1038.

---

[3] Indeed, the court intimated that the proceedings met the other Utah Constr. fairness requirements. (See Mem. & Order [ECF No. 24] at 12-13.)

[3] The court acknowledges that there are some factual aspects of the White case that are indeed distinguishable from the present circumstance. Nevertheless, "[a]lthough the facts may be distinguishable, the White court's reasoning and legal principles on which it relies are applicable to this case." Perez v. Alameda Cnty. Sheriffs Office, 2012 WL 273732 *7 n.10 (N.D. Cal. Jan. 30, 2012).

11

There, the plaintiff was dismissed from his employment at the Santa Cruz County Sheriff's Department. He contested his dismissal before the Santa Cruz County Civil Service Commission; the Commission affirmed his dismissal after a "public evidentiary hearing at which Miller was represented by counsel and was permitted to present oral and documentary evidence and to call witnesses." Id. at 1032. California Code of Civil Procedure section 1094.5 provided Miller with an opportunity to seek judicial review of the Commission's decision in superior court. Miller declined to seek that review; instead, he brought a Section 1983 action in federal court. The Ninth Circuit held that the <u>unreviewed</u> administrative determination, having met the <u>Utah Construction</u> fairness requirements, precluded the plaintiff's Section 1983 action. Id. at 1038. As in <u>Miller</u>, here, the fact that Plaintiff brought a Section 1983 claim in federal court in lieu of mandamus review in state court does not negate the preclusive effect of the unreviewed administrative determination.

That Plaintiff chose to forego mandamus review under California Code of Civil Procedure Section 1094.5, and file his Section 1983 claims in federal court, does not diminish the administrative proceeding's "preclusive effect in federal court." <u>Plaine v. McCabe</u>, 797 F.2d 713, 719 n.12 (9th Cir. 1986) ("If an adequate opportunity for review is available, a losing party cannot obstruct the preclusive use of the state administrative decision simply by foregoing her right to appeal.")

///

///

Based on the foregoing, the court concludes that the state administrative proceedings in this case were sufficiently judicial in nature to have preclusive effect upon plaintiff's Section 1983 claims.

Having made the necessary preliminary conclusions regarding the judicial character of the administrative proceedings, the court now turns to whether those proceedings fit within California's preclusion doctrine. Under California's claim preclusion[4] jurisprudence, "a valid final judgment[5] on the merits in favor of a defendant serves as a complete bar to further litigation on the same cause of action." White, 671 F.3d at 927 (quoting Slater, 15 Cal. 3d at 195). California follows the "'primary rights theory,' under which the invasion of one primary right gives rise to a single cause of action." Id. "In determining the primary right at stake, 'the significant factor is the harm suffered.'" Takahashi v. Bd. of Tr. of Livingston Union Sch. Bd., 783 F.2d 848 (9th Cir. 1986) (quoting Argarwal v. Johnson, 25 Cal.3d 932, 955 (1979)).

---

[4] While Plaintiff does argue that the facts of this case are insufficient to have issue preclusive effect, Plaintiff does not directly address Defendants' contention that this action is barred by the principles of claim preclusion. Because the court finds that claim preclusion requires the court to dismiss Plaintiff's claims, the court does not address issue preclusion.

[5] Plaintiff argues that the administrative proceedings did not result in a valid final judgment, and thus, cannot have preclusive effect. This contention in unavailing. As stated above, even unreviewed state administrative proceedings are *res judicata* as to later filed actions. In White, the city Manager's decision to uphold White's termination had preclusive effect; in this case, Urrutia's decision to uphold the termination has preclusive effect. The relevant case law clearly dictates that state administrative proceedings constitute final judgments for purposes of *res judicata*.

13

In this case, the identical primary right at stake during the underlying administrative proceedings—the right to employment—is at stake here. Specifically, in both the underlying arbitration, and here, Plaintiff alleges that he was wrongfully terminated. In other words, the harm for which Plaintiff seeks redress here is identical to the harm at issue in the underlying proceedings—loss of employment. See Acuña v. Regents of the Univ. of Cal., 56 Cal. App. 4th 639 (1997) (holding that state action was barred by federal summary judgment where both actions were based on primary right to be free of invidious employment discrimination); Takahashi, 783 F.2d at 851 ("While stating the primary right [to employment] asserted in her first action in constitutional terms, Takahashi has failed to allege a new injury.") While Plaintiff has presented the court with a new theory for recovery by invoking the equal protection clause and Section 1983, he has not alleged a new harm. See Slater v. Blackwood, 15 Cal. 3d 791, 795 (1975) ("Even where there are multiple legal theories upon which recovery might be predicated, one injury gives rise to only one claim of relief.") As such, California's doctrine of res judicata precludes Plaintiff's present Section 1983 action.

"Allowing relitigation of [Plaintiff's] claims would encourage litigants to forego state court review to receive federal review in § 1983 actions. This result would contravene the dictate of Elliott, where five Justices determined that § 1983 claims did not necessarily mandate a federal forum."
///
///

14

Eilrich, 839 F.2d at 634. Plaintiff's present Section 1983 action is therefore precluded under California's doctrine of res judicata.

**CONCLUSION**

Based on the foregoing, Defendants' motion for judgment on the pleadings is GRANTED. The clerk of the court is directed to close this case.

IT IS SO ORDERED.

Dated: May 10, 2012

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE

15